USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/10/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
JOHN C. BRAZIL,

                Plaintiff,

    - against -

NANCY A. BERRYHILL,
ACTING COMMISIONER OF
SOCIAL SECURITY,

                Defendant.
------------------------------------------------------------X

19 Civ. 7041 (RWL)

**DECISION & ORDER:**
**SOCIAL SECURITY APPEAL**

**ROBERT W. LEHRBURGER, United States Magistrate Judge.**

Plaintiff John C. Brazil, represented by counsel, commenced the instant action against Defendant Nancy A. Berryhill, Acting Commissioner of the Social Security Administration (the "Commissioner") pursuant to the Social Security Act (the "Act"), 42 U.S.C. § 405(g), seeking review of the Commissioner's decision that Brazil is not entitled to disability insurance benefits under 42 U.S.C. § 423 *et seq.*[1] Brazil has filed a motion for summary judgment on his claims pursuant to Rule 56(a) of the Federal Rules of Civil Procedure (Dkt. 12); the Commissioner opposes the motion and seeks judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 16). For the reasons stated below, this Court concludes that Brazil's motion should be GRANTED, the Commissioner's motion should be DENIED, and the case should be REMANDED.

---

[1] As of June 17, 2019, the Commissioner of the Social Security Administration is Andrew Saul. "An action does not abate when a public officer who is a party in an official capacity . . . ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party. Later proceedings should be in the substituted party's name, but any misnomer not affecting the parties' substantial rights must be disregarded. The court may order substitution at any time, but the absence of such an order does not affect the substitution." Fed. R. Civ. P. 25(d).

**Background**

**A.     Procedural History**

On April 21, 2016, Brazil filed an initial claim for disability insurance benefits ("DIB"), alleging disability beginning on December 17, 2015, due to a detached retina. (Dkt. 10, Administrative Record ("R."), at 64.)  On September 2, 2016, the Social Security Administration (the "Administration") denied his claim, concluding that Brazil's condition was "not severe enough to be considered disabling" as the medical evidence of Brazil's visual impairments "did not show any conditions of a nature that would prevent [him] from working."  (R. 77.)  On September 23, 2016, Brazil filed a written request for a hearing before an Administrative Law Judge ("ALJ") to review his claim, which took place on June 21, 2018, before ALJ Miriam L. Shire (the "Hearing").  (R. 83-84 (hearing request), 33-62 (hearing transcript).)   At the Hearing, Brazil was represented by Shailen Vazirani, a member of the Law Offices of Joseph A. Romano, P.C., the law firm that continues to represent Brazil.  (R. 33.)  On September 26, 2018, ALJ Shire issued a decision finding Brazil not disabled from December 17, 2015, through the date of her decision.  (R. 10-19.)  Brazil timely appealed ALJ Shire's decision to the Appeals Council, but on June 12, 2019, such request was denied, rendering ALJ Shire's decision the final determination of the Commissioner.  (R. 1-3.)

On July 29, 2019, Brazil filed the operative complaint seeking district court review pursuant to 42 U.S.C. § 405(g).  (Dkt. 1.)  On July 30, 2019, the Honorable Vernon S. Broderick, U.S.D.J., referred this matter to the undersigned for a Report and Recommendation. (Dkt. 6.)  On September 5, 2019, the parties consented to this Court's jurisdiction for all purposes.  (Dkt. 9.)

## B. Relevant Medical History

Pursuant to this Court's supplemental standing order issued on July 30, 2019, the Commissioner was required to direct the Court to any inaccuracies in Brazil's summary of the record in "a footnote or section that lists each such statement" that "explains why each such statement is inaccurate, and includes supporting cites to the record." (Dkt. 7, Order Supplementing Standing Order in Social Security Case (Represented Parties) ("Supp. Order"), ¶ 8(b).) Despite providing its own summary of the record for this Court's review, the Commissioner's brief did not include any such footnote or section identifying inaccuracies in Brazil's summary of the record. Accordingly, the Court incorporates by reference Brazil's summary of the underlying facts and medical records. (Dkt. 13, Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment on the Pleadings ("Brazil Mem."), at 3-9.) The Court also has independently reviewed the record.

In brief sum, two alleged disabling conditions are relevant to this Court's discussion: Brazil's right carpal tunnel syndrome and Brazil's detached retina (and the resultant visual impairments). During the relevant period, Brazil repeatedly sought treatment from Dr. Anton Orlin of Weill Cornell Medicine for his visual impairments and Dr. Richard Magill (and certain other physicians) of Westchester Medical Center for his right carpal tunnel syndrome. (*See, e.g.*, Brazil Mem. at 4-7 (detailing treatment by Dr. Orlin); *id.* at 4, 7, 9 (detailing treatment by Dr. Magill).) To treat his detached retina, Brazil underwent a pars plana vitrectomy (surgery) and used a variety of eye drops including Atropine Sulfate, Bronfenac Sodium, Drozolamide-Timolol, Neomycin-Polymyxin-Gramicidin, Prednisolone Acetate, Cyclopentolate 2% solution, Cyclopentolate Hcl 1% solution, Moxifloxacin, and Cyclogyl. (Brazil Mem. at 4-6.) To treat his right carpal tunnel

3

syndrome, Brazil underwent right trigger thumb release surgery and attended physical therapy.  (Brazil Mem. at 9.)

On April 9, 2018, Dr. Nancy Blace, a consultative examiner, evaluated Brazil's vision and observed that Brazil's right eye "best corrects to 20/20 and has full vision," but his left eye had "decreased visual acuity" following its history of "multiple retinal detachments and repairs."  (R. 477-78.)  Dr. Blace did not evaluate Brazil's carpal tunnel syndrome.  The record contains no medical source statement from any of Brazil's treating physicians assessing Brazil's carpal tunnel-related issues, or any his impairments for that matter.

**C.     Hearing Testimony**

During his June 21, 2018 hearing before ALJ Shire, Brazil testified that he had worked for the Metropolitan Transit Authority (the "MTA") as a physical canine trainer, which involved training dogs to detect explosives and to perform regular patrol work, from 2005 to 2015, when he retired due to his disability.  (R. 41-42.)  As a physical canine trainer, Brazil had to lift the dogs, which weighed anywhere from 55 to 90 pounds, and "did patrolling off the road time or when high alerts came around."  (R. 42.)  Brazil stopped working on or about December 17, 2015, when his alleged disabilities prevented him from continuing.  (R. 42.)  Brazil testified that he could no longer "train the dogs" following December 17, 2015, "because [he] trained with field explosives [he] couldn't read" and could not keep up with the dogs without depth perception or peripheral vision.  (R. 43.)

Following the onset of his alleged disabilities, Brazil broke his right hand – which is his dominant hand – after he "misjudged the curb" and fell.  (R. 44.)  The ALJ acknowledged that Brazil suffers from "obvious[] problems with [his] hands" that he has

4

"attended to" by undergoing trigger release surgeries. (R. 44-45.) When asked whether he experiences any difficulties performing tasks around the house, Brazil testified that his hands "cramp up" on him. (R. 45.) Brazil expanded that he feels like there are "pins, needles in them" – "like your hand falling asleep" – when he does something "for a long period of time." (*Id.*) When the ALJ suggested that Brazil had treated these symptoms with the trigger release surgeries, Brazil clarified that "today it's still – I still get the pins and needles. Probably from the release or from the carpal tunnel." (*Id.*) And, when asked to identify specific situations where the numbness would occur, Brazil gave the example of "writing anything for a long period of time," which he defines as "five minutes" or so, or playing "a few games" of Solitaire on the computer. (*Id.*) Brazil testified that he has "been back to physical therapy for it," which was helpful, but did not alleviate the cramping in his hands. (R. 46, 53-54.)

Despite the cramping in his hands, Brazil testified that he takes care of himself by doing his own laundry and grocery shopping (though "break[ing] it down to little bags," defined as "five, ten pound bag[s]"), and walks his dog, but noted that his mother – with whom he lives – "does the cooking." (R. 46-47.) Brazil testified to facing some difficulties when walking his dog, which calls for "switch[ing] hands with her" and slowly and carefully stepping off of curbs. (R. 47.) Additionally, his hands will "cramp[] up" and he will experience "pins and needles" after he carries grocery bags into his home, and he has significant difficulties tying his shoes. (R. 52.) When the ALJ posited that Brazil "can

5

pretty much do things but then it cramps up and then you have to take a minute or two to shake it out," Brazil agreed.  (R. 54.).

Brazil then testified that he drives only during the day and only for short distances, stating that he did not "like long distances because even – when you get the right eye – it gets blurry because it's taking the strain off the left eye."  (R. 47-48, 52-53.)  Indeed, Brazil testified that his year-old car only has "six, seven miles on it" because he does not drive it anywhere.  (R. 52-53.)  To attend doctor's appointments, or visit places for the first time, Brazil testified that he "tr[ies] to get things where [he] can take metro north," which he can ride for free.  (R. 49.)  But Brazil allegedly avoids "crowded areas" because he "bump[s] people over" on his left side.  (*Id.*)

Following Brazil's testimony, ALJ Shire heard testimony from Doug Shears, a vocational expert.  (R. 54-61.)  In relevant part, Shears testified that a hypothetical individual with a medium residual functional capacity ("RFC"), who could not be exposed to "extreme cold or excessive humidity," "lacks vision in one eye and therefore has no depth perception in one side and obviously no vision on that side," "wouldn't be required to stare at a screen like a television screen or a computer screen for more than 15 minutes at a time," could not be at "unprotected heights" or deal with "dangerous heavy machinery" or drive a motor vehicle, and could "frequently but not constantly . . . handle, finger and feel" would not be able to return to Brazil's past work, but would be able to hold a job in the national economy.  (R. 56-57.)  But, if the same hypothetical individual could only "occasionally handle, finger, and feel," that individual would not be able to hold a job in the national economy.  (R. 57-60.)

**D.      The Commissioner's Decision**

On September 26, 2018, ALJ Shire issued her decision, concluding that Brazil's visual impairments and carpal tunnel syndrome – albeit severe – did not warrant a finding of disability pursuant to 42 U.S.C. § 423 *et seq.* (R. 10-19.)  As required, ALJ Shire conducted the five-step evaluation process for determining whether an individual is disabled pursuant to 20 C.F.R. 404.1520(a).  (R. 11-18.)  ALJ Shire determined that Brazil met the insured status requirements of the Act, had not engaged in substantial gainful activity during the period of alleged disability, and suffered from the following severe impairments:  recurrent retinal detachment of the left eye; bilateral carpal tunnel syndrome; left trigger thumb; and right trigger thumb and fracture.  (R. 12.)

In reviewing Brazil's medical history and treatment, ALJ Shire concluded that Brazil has the RFC to perform "medium work" (as defined in 20 C.F.R. 404.1567(c)), but cannot have exposure to extreme cold or excessive humidity; cannot perform work requiring depth perception "because no vision in one eye"; cannot perform a job in which he would be required to stare at an electronic screen for more than 15 minutes at a time; cannot perform work at unprotected heights; cannot work with dangerous, heavy moving machinery; cannot work driving a motor vehicle; but can frequently handle, finger, and feel. (R. 13.)  ALJ Shire concluded that Brazil could not perform any of his past relevant work for the MTA.  (R. 17.)  But, ALJ Shire also concluded that, in light of Brazil's "age, education, work experience, and residual functional capacity," taken together with the testimony by vocational expert Shears, "there are jobs that exist in significant numbers in the national economy that the claimant can perform."  (R. 17.)

**Applicable Law**

7

**A.      Standard of Review**

A United States District Court may affirm, modify, or reverse (with or without remand) a final decision of the Commissioner of Social Security. 42 U.S.C. § 405(g); *Skrodzki v. Commissioner of Social Security Administration*, 693 F. App'x 29, 29 (2d Cir. 2017) (summary order). The inquiry is "whether the correct legal standards were applied and whether substantial evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004); *see also Talavera v. Astrue,* 697 F.3d 145, 151 (2d Cir. 2012) (same).

"'Failure to apply the correct legal standard constitutes reversible error, including, in certain circumstances, failure to adhere to the applicable regulations.'" *Douglass v. Astrue*, 496 F. App'x 154, 156 (2d Cir. 2012) (quoting *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (remanding for noncompliance with regulation, which resulted in incomplete factual findings)). Courts review de novo whether the correct legal principles were applied and whether the legal conclusions made by the ALJ were based on those principles. *See Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987) (reversing where the court could not "ascertain whether [the ALJ] applied the correct legal principles . . . in assessing [the plaintiff's] eligibility for disability benefits"); *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984) (reversing where the Commissioner's decision "was not in conformity with the regulations promulgated under the Social Security Act"); *Thomas v. Astrue*, 674 F. Supp. 2d 507, 520 (S.D.N.Y. 2009) (reversing for legal error after de novo consideration).

If the reviewing court is satisfied that the ALJ applied correct legal standards, then the court must "conduct a plenary review of the administrative record to determine if there

is substantial evidence, considering the record as a whole, to support the Commissioner's decision." *Brault v. Social Security Administration, Commissioner*, 683 F.3d 443, 447 (2d Cir. 2012) (per curiam) (quoting *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009)). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quoting *Richardson v. Perales*, 402 U.S. 389 (1971)); *see also Biestek v. Berryhill*, __ U.S. __, __, 139 S. Ct. 1148, 1154 (2019) (reaffirming same standard). "The substantial evidence standard means once an ALJ finds facts, [the court] can reject those facts only if a reasonable factfinder would have to conclude otherwise." *Brault*, 683 F.3d at 448 (internal quotation marks and citation omitted); *see also* 42 U.S.C. § 405(g) ("findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive").

To be supported by substantial evidence, the ALJ's decision must be based on consideration of "all evidence available in [the claimant]'s case record." 42 U.S.C. § 423(d)(5)(B). The Act requires the ALJ to set forth "a discussion of the evidence" and the "reasons upon which [the decision] is based." 42 U.S.C. § 405(b)(1). While the ALJ's decision need not "mention[] every item of testimony presented," *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) (per curiam), or "reconcile explicitly every conflicting shred of medical testimony," *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (quoting *Fiorello v. Heckler*, 725 F.2d 174, 176 (2d Cir. 1983)), the ALJ may not ignore or mischaracterize evidence of a person's alleged disability. *See Ericksson v. Commissioner of Social Security*, 557 F.3d 79, 82-84 (2d Cir. 2009) (mischaracterizing evidence); *Kohler*, 546

9

F.3d at 268-69 (overlooking and mischaracterizing evidence); *Ruiz v. Barnhart*, No. 01 Civ. 1120, 2002 WL 826812, at *6 (S.D.N.Y. May 1, 2002) (ignoring evidence).

Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982). The court must afford the Commissioner's determination considerable deference and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Secretary of Health and Human Services*, 733 F.2d 1037, 1041 (2d Cir. 1984); *Dunston v. Commissioner of Social Security,* No. 14 Civ. 3859, 2015 WL 54169, at *4 (S.D.N.Y. Jan. 5, 2015) (quoting *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991)), *R. & R. adopted*, 2015 WL 1514837 (S.D.N.Y. April 2, 2015). Accordingly, if a court finds that there is substantial evidence supporting the Commissioner's decision, the court must uphold the decision, even if there is also substantial evidence for the plaintiff's position. *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010). The court, however, will not defer to the Commissioner's determination if it is "the product of legal error." *Dunston*, 2015 WL 54169, at *4 (citing, *inter alia, Douglass*, 496 F. App'x at 156; *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999)).

**B.     Legal Principles Applicable to Disability Determinations**

Under the Social Security Act, every individual considered to have a "disability" is entitled to disability insurance benefits. 42 U.S.C. § 423(a)(1). The Act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or

10

which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  A claimant's impairments must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

To determine whether an individual is disabled entitling them to DIB, the Commissioner conducts a five-step inquiry.  20 C.F.R. § 404.1520.  First, the Commissioner must determine whether the claimant is currently engaged in any substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(i).  Second, if the claimant is not gainfully engaged in any activity, the Commissioner must determine whether the claimant has a "severe impairment" that significantly limits the claimant's ability to do basic work activities.  Under the applicable regulations, an impairment or combination of impairments that significantly limits the claimant's ability to perform basic work activities is considered "severe."  20 C.F.R. § 404.1520(a)(4)(ii), (c).  Third, if the claimant has a severe impairment, the Commissioner must determine whether the impairment is, or medically equals, one of those included in the "Listings" of the regulations contained at 20 C.F.R. Part 404, Subpart P, Appendix 1.  If it is, the Commissioner will presume the claimant to be disabled, and the claimant will be eligible for benefits.  20 C.F.R. § 404.1520(a)(4)(iii), (d).

If the claimant does not meet the criteria for being presumed disabled, then the Commissioner must next assess the claimant's RFC – that is, the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her impairments – and determine whether the claimant possesses the RFC to perform the

11

claimant's past work. 20 C.F.R. § 404.1520(a)(4)(iv). Fifth and finally, if the claimant is not capable of performing prior work, the Commissioner must determine whether the claimant is capable of performing other available work. 20 C.F.R. § 404.1520(a)(4)(v), (e). The claimant bears the burden of proof at the first four steps. *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013). Once the claimant has established that they are unable to perform their past work, however, the Commissioner bears the burden of showing that "there is other gainful work in the national economy which the claimant could perform." *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998) (quoting *Carroll v. Secretary of Health and Human Services*, 705 F.2d 638, 642 (2d Cir. 1983)).

## Discussion

Brazil's challenges to ALJ Shire's decision center on her conclusion that Brazil maintains the RFC to perform "medium" work as defined in 20 C.F.R. § 404.1567(c). First, Brazil asserts that ALJ Shire ignored both objective medical evidence and Brazil's testimony in concluding that: (1) he is able to lift up to 50 pounds at a time or frequently lift or carry objects weighing up to 25 pounds (as is necessary to perform "medium" work); and (2) he is able to "frequently handle, finger, and feel." (Brazil Mem. at 10-12.) Second, Brazil asserts that ALJ Shire erred in "mischaracteriz[ing] evidence related to [Brazil's] ability to care for himself." (Brazil Mem. at 12-13.) Third, Brazil asserts that ALJ Shire erred in failing to consider Brazil's visual impairments in assessing Brazil's RFC as is required by SSR 83-14 and in failing to conclude that his visual impairments precluded him from performing "medium work" in light of SSR 85-15. (Brazil Mem. at 13-15.) The Commissioner opposes, arguing that ALJ Shire's decision is supported by substantial evidence and should be affirmed.

The Court, however, cannot assess whether ALJ Shire's decision was supported by substantial evidence. ALJ Shire failed to develop a complete and full evidentiary record regarding Brazil's alleged disabilities, a threshold requirement. Specifically, ALJ Shire did not obtain the opinions of Brazil's two treating physicians – Dr. Orlin and Dr. Magill – on the limitations that Brazil's visual impairments and carpal tunnel syndrome imposed on his work-related capabilities.

**A.      ALJ Shire Failed to Sufficiently Develop the Administrative Record**

Whether the ALJ has fulfilled his duty to develop the administrative record is a "threshold question" that must be addressed prior to any determination of whether the ALJ's decision is supported by substantial evidence. *Rivera v. Commissioner of Social Security*, 368 F. Supp. 3d 626, 642 (S.D.N.Y. 2019); *Downes v. Colvin*, No. 14 Civ. 7147, 2015 WL 4481088, at *9 (S.D.N.Y. July 22, 2015) ("Before determining whether the Commissioner's final decision is supported by substantial evidence under 42 U.S.C. § 405(g), 'the court must first be satisfied that the ALJ provided plaintiff with "a full hearing under the Secretary's regulations" and also fully and completely developed the administrative record'" (citations omitted)).

The duty to develop the record arises from the "inquisitorial" (as opposed to "adversarial") nature of Social Security proceedings, which calls for "the social security ALJ, unlike a judge in trial, . . . [to] affirmatively develop the record." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Lamay v. Commissioner of Social Security*, 562 F.3d 508-09 (2d Cir. 2009)); *see also Butts v. Barnhart*, 388 F.3d 377, 386 (2d Cir. 2004) ("It is the ALJ's duty to investigate and develop the facts and develop the arguments both for and against the granting of benefits.") (internal citation omitted). The ALJ maintains

13

this duty regardless of whether a claimant is represented by counsel. *Eusepi v. Colvin*, 595 F. App'x 7, 9 (2d Cir. 2014) (summary order); *see also Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996) (same).

To fulfill the duty to develop the record, the ALJ must "investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 111 (2000); *see also Butts*, 388 F.3d at 386 (same). As made clear by the underlying regulations, this investigation calls for the ALJ to "make every reasonable effort to help [a claimant] get medical reports" from his "medical sources" (i.e., his treating physicians) in order to develop the claimant's "complete medical history." 20 C.F.R. 404.1512(b)(1). Such "medical reports" should include "medical history, clinical and laboratory findings, diagnosis, treatment prescribed (with response and prognosis), and '[a] statement about what [the claimant] can still do despite [her] impairment(s).'" *Rivera*, 368 F. Supp. 3d at 643 (quoting 20 C.F.R. §§ 404.1513(b)(6) (2013), 416.913(b)(6) (2013)).

Accordingly, "the ALJ should obtain, from the claimant's treating physicians, 'expert opinions as to the nature and severity of the claimed disability.'" *Id.* (citation omitted). These "expert opinions," also known as medical source opinions, must consist of more than raw data from the treating physicians, particularly as their opinions may be binding on the ALJ. *Downes*, 2015 WL 4481088 at *10; *see also Hooper v. Colvin*, 199 F. Supp. 3d 796, 812 (S.D.N.Y 2016) ("the ALJ must 'make every reasonable effort to obtain not merely the medical records of the treating physician but also a report that sets forth the opinion of the treating physician as to the existence, the nature, and the severity of the claimed disability'") (quoting *Molina v. Barnhart*, No. 04 Civ. 3201, 2005 WL 2035959, at *6 (S.D.N.Y. Aug. 17, 2005)).

It is undisputed that Brazil saw two physicians for treatments related to his alleged disabilities during the relevant period: from September 2015 on, Brazil saw Dr. Orlin for treatments related to his visual impairments, and from January 2015 on, Brazil saw Dr. Magill for treatments related to his carpal tunnel syndrome. Indeed, the record contains considerable raw data from these physicians, which ALJ Shire overviews in her assessment of Brazil's RFC. (*See* R. 234-475 (treatment records from Dr. Orlin), 607-659 (treatment records from Dr. Magill); R. 13-15 (detailing treatments received from Dr. Orlin and Dr. Magill).)

But, as the ALJ's decision makes clear, the only opinion evidence in the record comes from two consultative examiners and addresses only Brazil's visual limitations, not those related to his carpal tunnel syndrome: (1) the "State agency medical consultant," who assessed Brazil in September 2016 and opined that Brazil was "not disabled" based on his visual impairments (but makes no mention of Brazil's carpal tunnel syndrome); and (2) Dr. Nancy Blace, M.D., a consultative examiner who assessed only Brazil's visual impairments during a single examination. (R. 16 (ALJ decision), 63-68 (State agency medical consultant's assessment), 477-480 (Blace's assessment).) The ALJ afforded "little weight" to the State agency medical consultant's opinion, but "good weight" to Dr. Blace's opinion. (R. 16.) The lack of opinion evidence from treating physicians – typically afforded controlling weight – should have signaled to ALJ Shire that the administrative record was incomplete. But, her decision makes no reference to this gap, nor does it highlight any efforts made to fill it.

To be sure, the Second Circuit has held that "it is not *per se* error for an ALJ to make a disability determination without having sought the opinion of the claimant's

15

treating physician." *Sanchez v. Colvin*, No. 13 Civ. 6303, 2015 WL 736102, at *5 (S.D.N.Y. Feb. 20, 2015) (describing how *Tankisi v. Commissioner of Social Security*, 521 F. App'x 29, 34 (2d Cir. 2013) reconciles competing directives in the SSA's regulations regarding the "need" to seek out a treating physician's opinion); *see also Monroe v. Commissioner*, 676 F. App'x 5, 8-9 (2d Cir. 2017) (summary order) (reaffirming principle that a medical source statement or formal medical opinion is not necessarily required where the record contains sufficient evidence from which an ALJ can assess the claimant's residual functional capacity); *Pellam v. Astrue*, 508 F. App'x 87, 90 (2d Cir. 2013) (summary order) (ALJ had no obligation to obtain medical source statement from treating physician where ALJ's decision was largely supported by consultative physician's opinion, and the record contained all treatment notes from claimant's treating physicians).

Instead, the Court must assess whether "[g]iven the specific facts of this case," the administrative record before the ALJ was otherwise "sufficiently comprehensive 'to permit an informed finding by the ALJ.'" *Sanchez*, 2015 WL 736102, at *5 (quoting *Tankisi*, 521 F. App'x at 33-34); *see also Guillen v. Berryhill*, 697 F. App'x 107, 108-09 (2d Cir. 2017) (summary order) (remanding case where "[t]he medical records discuss[ed] [claimant's] illnesses and suggest[ed] treatment for them, but offer[ed] no insight into how her impairments affect or do not affect her ability to work, or her ability to undertake her activities of everyday life"). A decision not to remand "assumes that there are no obvious gaps in the record precluding the ALJ from properly assessing the claimant's residual functional capacity." *Downes*, 2015 WL 4481088, at *15.

The administrative record before this Court – which contains no opinion evidence from any treating physician and no opinion evidence from *any* physician regarding one of

16

Brazil's "severe impairments" at issue – is nowhere near "sufficiently comprehensive" so as to excuse ALJ Shire's failure to seek a treating physician's opinion regarding Brazil's alleged disabilities. This is made all the clearer by contrasting Brazil's administrative record against those that *have* been found to be "sufficiently comprehensive" so as to not require remand on similar grounds. *See, e.g.*, *Tankisi*, 521 F. App'x at 34 (refusing to remand for ALJ's failure to obtain treating physician opinions where medical record included an assessment of limitations from one of claimant's treating physicians and was otherwise "quite extensive"); *Perez*, 77 F.3d at 48 (refusing to remand for ALJ's failure to obtain additional opinion evidence from claimant's treating physicians where ALJ "already had obtained and considered" reports from those treating physicians and otherwise had "a complete medical history" before him).

Indeed, this Court has consistently remanded where, as here, the record is devoid of any opinions from any treating physician regarding the claimant's alleged impairments. *See Downes*, 2015 WL 4481088, at *15 (remanding where "the treatment notes and test results from [the claimant's] treating physicians do not assess how [the claimant's] symptoms limited his functional capacities" and "[t]he only direct assessments of [the claimant's] functional capacities were made by the consultative physicians"); *Sanchez*, 2015 WL 736102, *6 (remanding where the medical records before the ALJ were "not voluminous and [did] not include an assessment of [the claimant's] limitations from a treating physician") (internal quotation marks, citation, and alterations omitted); *Beller v. Astrue*, No. 12 Civ. 5112, 2013 WL 2452168, at *18 (S.D.N.Y. June 5, 2013) (remanding where the record contained no treating physician opinions regarding the claimant's

17

physical abilities or limitations despite statements from a consultative examiner and an RFC assessment from a state agency expert).[2]

Quite simply, ALJ Shire should have attempted to obtain medical source opinions from Drs. Orlin and Magill as to the limiting effects of Brazil's visual impairments and carpal tunnel syndrome following December 17, 2015, particularly in light of their respective, extensive histories treating Brazil. Accordingly, the case will be remanded for further development of the record.

## B.   Brazil's Credibility & Other Arguments

The Court acknowledges Brazil's other arguments in favor of remand, namely: (1) the ALJ's failure to account for Brazil's testimony regarding subjective symptoms in assessing his RFC; (2) the ALJ's mischaracterization of Brazil's ability to care for himself in assessing his RFC; and (3) the ALJ's failure to account for Brazil's visual impairments

---

[2] At the very least, an ALJ must obtain a medical opinion from a consultative physician. *See Hooper*, 199 F. Supp. 3d at 815 (remanding for further development of the record where the ALJ failed to "obtain a consultative examination or seek comprehensive medical opinions from the treating physicians" and instead "made [the claimant's] disability determination based on a record devoid of any truly complete medical opinion"); *Rivera v. Colvin*, No. 11 Civ. 7469, 2014 WL 3732317, at *24 (S.D.N.Y. July 28, 2014) ("if the information obtained from the medical sources is insufficient to make a disability determination or the Commissioner is unable to seek clarification from treating sources, the regulations provide that the Commissioner should ask the claimant to attend one or more consultative examinations") (citing 20 C.F.R. § 416.912(e)); *Rogers v. Astrue*, 895 F. Supp. 2d 541, 552 (S.D.N.Y. 2012) ("to the extent Plaintiff's treating physicians cannot provide sufficient information about the relevant time period, the ALJ should at least consider sending Plaintiff for a consultative examination"). Indeed, it is well-settled that "the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion." *Balsamo*, 142 F.3d at 81 (quoting *McBrayer v. Secretary of Health and Human Services*, 712 F.2d 795, 799 (2d Cir. 1983)); *see also Deubell v. Commissioner of Social Security*, No. 18-CV-935, 2019 WL 5781860, at *4 (W.D.N.Y. Nov. 6, 2019) ("It is established in Social Security law that an ALJ may not play doctor and substitute his own opinion for that of a physician, or make judgments that are not substantiated by objective medical evidence") (quoting *Brennan-Kenyon v. Barnhart*, 252 F. Supp. 2d 681, 691 (N.D. Ill. 2003)).

in assessing his RFC, as is called for by SSR 83-14 and SSR 85-15. (Brazil Mem. at 10-15.) But, given remand of the case for further development of the record, the Commissioner will be required to reassess Brazil's credibility and his RFC in light of the new evidence presented. Accordingly, there is no need for this Court to address these issues further at this juncture.

## Conclusion

For the reasons stated above, pursuant to sentence four of 42 U.S.C. § 405(g), the Commissioner's motion is DENIED, the Plaintiff's motion is GRANTED, and the case is REMANDED for further proceedings consistent with this opinion.

SO ORDERED.

_____
ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE

Dated:   September 10, 2020
         New York, New York

Copies transmitted this date to all counsel of record.